In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee of the DBSI Estate Litigation Trust created by operation of the Second Amended Joint Chapter 11 Plan of Liquidation, Plaintiff,

v.

Douglas L. Swenson, et al., Defendants.

Bankruptcy No. 08–12687(PJW).
Adversary No. 10–54649(PJW).

United States Bankruptcy Court,
D. Delaware.

June 22, 2011.

Jami B. Nimeroff, Brown Stone Nimeroff LLC, Wilmington, DE, Monte N. Stewart, Craig G. Taylor, Belnap Stewart Taylor & Morris PLLC, Boise, ID, for Defendant Thomas Var Reeve.

Natasha M. Songonuga, Gibbons P.C., Wilmington, DE, for James R. Zazzali, Trustee for the DBSI Estate Litigation Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to Thomas Var Reeve's motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. # 48.) For the reasons discussed below, I will deny the motion.

### Background

DBSI, Inc. and certain of its affiliates filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code on November 6, 2008. A plan of liquidation was confirmed on October 26, 2010, resulting in the appointment of James R. Zazzali as trustee ("Trustee") to administer the DBSI Estate Liquidation Trust. As that confirmation order sets forth in greater detail, DBSI, Inc. and its affiliates were operated as a single enterprise under the control of a small group of insiders. (Case No. 08–12687, Doc. # 5924, ¶ 27.)

The Trustee commenced this adversary proceeding to recover allegedly fraudulent transfers made (i) to these insiders, including Reeve, and (ii) to the IRS and the taxing authorities of 25 states on behalf of the insiders. Trustee seeks to recover transfers made in the two years prior to the petition date pursuant to § 548, and he seeks to recover transfers made in the four years prior to the petition date under § 544(b), applying Idaho fraudulent transfer statutes, Idaho Code Ann. §§ 55–906, 55–913, 55–914, 55–916, and 55–917.

The Trustee's Second Amended Complaint (the "Complaint") alleges that "the DBSI Enterprise was a sprawling, fraudulent real estate investment empire, involving hundreds of corporations and properties, but dominated and controlled by defendant Douglas Swenson and the other Insider Defendants," including Reeve. (Doc. # 33, ¶¶ k, 47.) Trustee alleges that Reeve held substantial owner-

ship interests in various DBSI enterprises. (*Id.*, ¶ 504 ("As of the Petition Date, Reeve owned 33.3% of Kastera, 1.24% of DBSI and 10.38% of Stellar.").) In addition, the Trustee alleges that Reeve held upper-level positions at some of the DBSI entities:

> Reeve was the President of Kastera, which owned 100% of the interests in Kastera Homes and Kastera Development. Reeve also served as President of Kastera Development. Reeve was a manager of DDRS, FOR 1031, and Stellar.

(*Id.*, ¶ 505.)

The Complaint seeks to recover allegedly fraudulent transfers totaling $1,745,076.76 Reeve received in the two years prior to the DBSI bankruptcy, pursuant to section 548 of the Bankruptcy Code. The Complaint also seeks to recover $6,110,781.54 Reeve received during the four years preceding DBSI's bankruptcy, under section 544 of the Bankruptcy Code and relevant Idaho law.

Reeve has moved to dismiss the adversary proceeding as to him pursuant to Federal Rule of Civil Procedure 12(b)(2), applicable here under Federal Rule of Bankruptcy Procedure 7012. Reeve contends that this Court does not have personal jurisdiction over him because he is a resident of Idaho who has had insufficient contacts with Delaware. Reeve asserts that his work for DBSI occurred mostly in Idaho, that he lived in Idaho during that time, and that none of the allegedly actionable events occurred in Delaware. (Doc. # 49, p. 4.) Furthermore, he declares that he has never been to Delaware or done any business in Delaware. (*Id.*) Consequently, Reeve contends that, even though Federal Rule of Bankruptcy Procedure 7004(d) ("Rule 7004(d)") provides for nationwide service of process, the Fifth Amendment's Due Process Clause prohibits this Court from exercising jurisdiction over him.

The Trustee raises three main arguments in opposition: (i) that the Court's retention of jurisdiction in the confirmed plan of liquidation precludes Reeve's arguments; (ii) that the Fifth Amendment does not restrict Rule 7004(d)'s nationwide service of process; and (iii) even if the Fifth Amendment requires this Court to consider "traditional notions of fair play and substantial justice," it is proper for this Court to exercise personal jurisdiction over Reeve because he has had sufficient contacts with Delaware and because he has not shown that litigating this case in Delaware would impose a severe burden on him.

The Trustee's first argument reflects a misunderstanding of the Court's retention of jurisdiction in the confirmed plan of liquidation. The Court retained "exclusive jurisdiction of the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan, to the fullest extent permitted by law." (Case No. 08–12687, Doc. # 5699, Article XII, A.) This concerns jurisdiction over cases, not over parties to those cases. The Trustee's argument conflates subject matter jurisdiction with personal jurisdiction.

### Discussion

■ " 'When the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and is entitled to have its allegations taken as true and all factual disputes drawn in its favor.' " *Charan Trading Corp. v. Uni–Marts, LLC (In re Uni–Marts, LLC)*, 399 B.R. 400, 406 (Bankr.D.Del.2009) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004) (internal alterations omitted)). The Court has held no evidentiary hearing and will accordingly base its

decision on the allegations in the Trustee's Complaint.

As set forth in *Uni–Marts,* Rule 7004(d) provides for nationwide service of process and, therefore, provides the statutory basis for this Court's *in personam* jurisdiction:

Bankruptcy Rule 7004(f) provides that:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr.P. 7004(f).

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure generally limits in personam jurisdiction of the federal courts over non-resident defendants to that which a court of general jurisdiction in the forum state would have. However, this limitation does not apply where extra-territorial service of process is "authorized by a federal statute." Fed. R.Civ.P. 4(k)(1)(C). Bankruptcy Rule 7004(d), which allows nationwide service of process in bankruptcy cases, is just such a statute. *Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.),* 835 F.2d 1341, 1344 (11th Cir. 1988) ("Bankruptcy Rule 7004(d) provides for nationwide service of process and thus is the statutory basis for personal jurisdiction in this case ...."), rev'd on other grounds, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

*Id.*

■ "Where Congress has spoken by authorizing nationwide service of process, ... the jurisdiction of a federal court need not be confined by the defendant's contact with the state in which the federal court sits." *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 369 (3d Cir.2002). *Pinker* held that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Id.*

Although *Pinker* did not specifically address the constitutional restraints on nationwide service of process, that court assumed, without deciding, that service of process must comport with "traditional notions of fair play and substantial justice." *Id.* at 370 n. 2 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In the context of state courts, the traditional considerations for this inquiry are " 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interests of the several States in furthering substantive social policies.' " *Pinker,* 292 F.3d at 370 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "In the federal court context, the inquiry will be slightly different, taking less account of federalism concerns and focusing more on the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Id.* at 370–71 (internal citations omitted).

Courts in this district, consistent with *Pinker's* suggested approach, have applied the Fifth Amendment Due Process Clause's "fair play and substantial justice" restrictions on nationwide service of process. *See Uni–Marts,* 399 B.R. at 408; *Tribune Media Servs., Inc. v. Beatty (In*

*re Tribune Co.)*, 418 B.R. 116, 123 (Bankr. D.Del.2009).

■ The Court's inquiry is therefore twofold. First, the Court must determine whether Reeve had sufficient contacts with the relevant forum. Because Rule 7004(d) provides for nationwide service of process, the relevant forum is the United States. *See Uni–Marts*, 399 B.R. at 406–407; *In re Tribune Co.*, 418 B.R. at 123. Here, Reeve clearly has had sufficient contacts with the United States, as he resides in the United States and all allegedly actionable conduct occurred in the United States.

■ Second, the Court must determine if its exercise of personal jurisdiction over Reeve comports with "traditional notions of fair play and substantial justice." This inquiry requires balancing the burdens placed upon Reeve against the interest in furthering the policies of the Bankruptcy Code.

Reeve contends that litigating this case in Delaware would amount to an undue burden because he (i) resides in Idaho, (ii) "is in difficult financial circumstances," (iii) "has not found steady employment since the end of his DBSI employment," and (iv) "is having to pay defense costs incurred in this action out of his own pocket." (Doc. # 49, pp. 11–12.) He further contends that litigating this case in Idaho would be much less expensive than it would be in Delaware. (*Id.*, p. 12.) He concludes that "[i]n these circumstances, for this district to allow here prosecution of this adversary proceeding against Reeve will make litigation 'so gravely difficult and inconvenient' that he unfairly will be at a 'severe disadvantage' in comparison to his opponent. Because that is so, the Fifth Amendment precludes such prosecution here." (*Id.* at 12–13.)

In support of his argument, Reeve relies on *Talkin v. Deluxe Corp.*, No. 05–2305–

CM, 2007 WL 1469643 (D.Kan. May 18, 2007), a case that is factually inapposite. *Talkin* involved a low-level employee who examined claims that were randomly assigned to him by his insurance company employer. In contrast, in the Trustee's Complaint, Reeve is labeled as an "insider." (Doc. # 33, ¶ k.) In paragraph 156 of the Complaint, the Trustee alleges that "[s]ince its formation, FOR 1031 has been managed and controlled by Swenson, Reeve, and/or Bringhurst." FOR 1031 is one of the debtors in this Chapter 11 case. Paragraph 506 of the Complaint alleges that Reeve received improper transfers in the total amount of $1,745,076.76 in the two year period before bankruptcy. Paragraph 507 alleges that during the four year period pre-bankruptcy, Reeve received improper transfers totaling $6,110,781.54. Exhibit D to the Complaint identifies each one of these allegedly improper transfers. The Court accepts these allegations as true for purposes of reviewing this motion to dismiss. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp 2d 324, 331 (D.Del.2007). The Trustee's Complaint suggests a grand scheme to enrich the insiders at the expense of legitimate creditors, and it alleges that Reeve was a major player in this scheme.

■ Furthermore, Reeve has failed to prove that he cannot bear the financial burden of litigating in Delaware. He has provided no evidence as to his wealth or income, instead simply saying that he has been unable to find "steady employment" since the DBSI enterprise imploded. Even if Reeve were able to establish that litigating this case in Delaware would impose a burden on him, this burden would not outweigh the benefits of having this case heard in the Trustee's selected forum. A bankruptcy trustee's duty is to maximize the value of the estate:

A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors. To fulfill this duty, trustees and debtors in possession have a variety of statutorily created powers, known as avoidance powers, which enable them to recover property on behalf of the bankruptcy estate.

*Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir.2000) (internal citations omitted). Granting Reeve's request here would frustrate the Trustee's performance of that duty. In addition to Reeve, the Complaint identifies five other "insiders" who allegedly received improper transfers. It would place an improper burden and expense on the estate to sever the Reeve transactions to a court in Idaho while the other five defendants remain in this Court. It is conceivable that if the case against Reeve were tried in Idaho, the other five insiders would be called as witnesses to demonstrate the grand scheme alleged in the Complaint. Thus, the Trustee would have to put his case on twice. The expense of this duplicative litigation would be borne by the creditors for whose benefit the fraudulent transfers actions are meant to serve.

Litigating the case against Reeve in this Court may be inconvenient for Reeve, but Congress obviously contemplated this issue in enacting 28 U.S.C. § 1409. Subsection (a) specifically authorizes commencement of actions in the court in which the chapter case is pending. Subsection (b) allows for a very limited exception to the rule, *i.e.,* claims under $11,725, can only be brought in the district court for the district in which the defendant resides. Thus, except for claims under $11,725 against non-insiders, Congress had to know that most avoidance actions in large cases would re-sult in an inconvenience to the defendants. Furthermore, subsection (b)'s exception applies only to noninsider defendants, suggesting Congress contemplated insider defendants, such as Reeve, being haled into the court where the chapter case is pending.

### Conclusion

For the aforementioned reasons, I will deny Reeve's motion to dismiss.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendant Thomas Var Reeve's motion (Doc. # 48) to dismiss the complaint is **DENIED.**